Jesse L. BURTON, Individually and on behalf of all others similarly situated, Plaintiff,

v.

CLARKSDALE POLICE DEPARTMENT, L. M. Collins, Chief of Police; City of Clarksdale, Richard Webster, Mayor; Clarksdale Civil Service Commission, Joseph Gibbs, Chairman of Civil Service Commission, Defendants.

No. DC 76–27–S.

United States District Court,
N. D. Mississippi,
Delta Division.

Jan. 21, 1980.

Johnnie E. Walls, Jr., McTeer, Walls, Bailey & Buck, Greenville, Miss., for plaintiff.

David Hunt, Sullivan, Smith, Hunt & Vickery, Clarksdale, Miss., for defendants.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

The action sub judice was submitted to the court at a non-jury trial held at the United States Post Office and Courthouse in Clarksdale, Mississippi, on October 24 and 25, 1979. The action is now ripe for decision.

Plaintiff, Jesse L. Burton (hereafter "Burton") is a member of the police force of the City of Clarksdale, Mississippi. He commenced the action sub judice on February 27, 1976, seeking declaratory, injunctive, and equitable relief against the City of Clarksdale, Mississippi, the Police Department of said City, and certain of its officers and officials, not necessary here to be named.

Burton was, at the time of the commencement of the action sub judice, and continues to be a black member of the police force of Clarksdale. Burton filed the action as a class action seeking to represent members of his race in complaints based upon conduct of the police department and city officials which he alleges to be racially discriminatory.

The court entered an order on June 14, 1977, granting Burton permission to prosecute the case as a class action, defining the class as:

A Fed.R.Civ.P. 23(b)(2) class [action] on behalf of Jesse Burton and all others similarly situated or subjected to, or affected by, the racially discriminatory and unlawful employment practices committed by defendants.

The class action feature of the litigation was terminated by a consent decree entered by the court on August 29, 1979.

Burton's requests for individual relief were not terminated by the consent decree. They were, however, the subject of the non-jury trial held on October 24 and 25, 1979, at Clarksdale.

The court is now fully informed in the premises and adopts as its findings of fact and conclusions of law, required by Rule 52(a), Fed.R.Civ.P., the following:

### FINDINGS OF FACT

1. Burton is a 35 year old black male police officer with the rank of Patrolman First Class with the City of Clarksdale, Mississippi, Police Department. Burton was employed in October, 1971, as a rookie patrolman. He received automatic advances from rookie patrolman to Patrolman Second Class to Patrolman First Class. Burton has received no further promotions.

2. The first promotion sought by Burton was in March, 1974, at which time the city sought applicants for the rank of Sergeant and also sought to give qualifying tests for the rank of Captain. Burton, although a patrolman, applied to take the test for the rank of Captain. All others who applied to take the Captain's test were Sergeants. Promotions within the Police Department operating under the Clarksdale Civil Service Commission Rules and Regulations must be made from the next lowest rank if applicants are available. Burton did not apply for the position of Sergeant and did not take the written test for Sergeant, but instead took the test given for the position of Captain. No answer sheet could be found for the Captain's test, and, therefore, the results were discarded. No Captain's position was filled; on the contrary, the position held by A. M. Martin was made permanent. From the applicants for the position of Sergeant, Billy R. Hawkins and Roger Roark were chosen. The promotions of John Hopkins and Joe K. Logan to Sergeant were a result of the policy that members of the Dog Squad, a voluntary assignment, receive the rank of Sergeant. No racially discriminatory intent against Burton is inferred from the promotion of the Dog Squad officers to Sergeant. Burton has never sought that duty. The promotions of Officers Hopkins, Logan, Boyd, and Rikard are irrelevant to the promotion or failure of promotion of Burton.

3. The promotions of Officers Hawkins and Roark occurred March 28, 1974, one year and 148 days prior to the plaintiff's filing his charge with the Equal Employment Opportunity Commission.

4. The promotion of Officers Roark and Hawkins (the latter carrying the same rank of patrolman as Burton as a result of Officer Hawkins having left the Clarksdale Police Department for a period of less than a year, even though he now has approximately 9½ to 10 years' experience), has not been shown to be racially discriminatory against Burton, he having made no application for

that position in accordance with the applicable procedure. These promotions occurred more than 180 days prior to Burton filing his charge.

5. On or about July 4, 1975, Burton engaged in an altercation with a white officer of the Clarksdale Police Department in the Coahoma County, Mississippi Jail while both were on duty. As a result of this altercation, Burton was suspended 15 days without pay and the white officer was suspended for a total of 45 days without pay. The plaintiff requested an investigation by the Clarksdale Civil Service Commission of the disciplinary action taken against him. This investigation was conducted and the Civil Service Commission entered its Judgment on August 13, 1975, affirming the suspension of the Plaintiff.

6. On August 19, 1975, Burton filed his complaint before the Equal Employment Opportunity Commission alleging discrimination against him by the Clarksdale Police Department.

7. On September 11, 1975, Burton filed an appeal with the Circuit Court of Coahoma County, Mississippi, a court of general jurisdiction in the State of Mississippi, seeking a review of the Judgment of the Civil Service Commission of the City of Clarksdale, Mississippi, pursuant to Section 21–31–71, Mississippi Code of 1972, Ann. The Circuit Court of Coahoma County, Mississippi, on February 16, 1977, entered its Final Judgment affirming the judgment of the Civil Service Commission, finding that it was made in good faith and for cause.

8. On December 1, 1975, Burton, while off duty, was involved in an altercation with an individual in the lobby of the New Roxy Theater in Clarksdale, Mississippi. Burton pulled his service revolver and struck the individual on the head, causing a bleeding wound. Burton was convicted of assault in the Police Justice Court of the City of Clarksdale, Mississippi, and his appeal from this conviction was dismissed by Writ of Procedendo from the County Court of Coahoma County, Mississippi. As a result of this incident, the City of Clarksdale Board of Mayor and Commissioners suspended Burton without pay, from his employment with the Clarksdale Police Department for a period of 30 days. Burton did not seek any review of this disciplinary action taken against him.

9. On January 15, 1976, subsequent to Burton having filed his charge before the EEOC on August 19, 1975, a notice was placed in four different locations in the Clarksdale Police Station requesting anyone interested in the position of Detective on a six-month trial basis to submit written application by January 19, 1976, at 8:00 A.M. Four applications were received within the deadline and a successful applicant was chosen at 2:00 P.M. that afternoon, January 19, 1976. Burton belatedly submitted his written application on January 20, 1976. He offers no explanation for the delay. The position for which applications were sought was simply one to be filled on a trial basis. Therefore, six months later on July 15, 1976, a notice was placed on all bulletin boards in the Police Station and given to the shift captains to the effect that written applications for the permanent position of Criminal Investigator Sergeant would be received until July 23, 1976, at 8:00 A.M. Burton did not apply, nor did he express any interest in this position. The selection of one other than Burton under these circumstances does not constitute racial discrimination against Burton.

10. During May, 1976, a notice was posted that anyone interested in applying for the position of Identification Officer should submit written application on May 17, 1976, at 8:00 A.M. Among the duties of the position as advertised were secretary to both Juvenile Officer and the Detective Bureau, maintenance of records, taking and transcribing witness statements, and interviewing female rape victims. Ability to take shorthand was a requirement. The position was not to carry any supervisory responsibilities and was a new position in the Police Department, somewhere below the pay level of patrolman. The plaintiff applied, as did Elaine Morris, white female then employed by the Clarksdale Police Department as a secretary or clerk on the

weekly payroll. Plaintiff's Exhibit 9 does not indicate any such position was actually filled by the Clarksdale Police Department. Regardless, the denial of this position to Burton in favor of the white female would not have been racially discriminatory. It was not a promotion, but would have involved less pay for Burton. Burton did not meet the qualifications, particularly the requirement of taking shorthand.

11. Burton has submitted plaintiff's Exhibit 10 as a chronology of promotions within the Clarksdale Police Department, showing the name, date of promotion, date of hire, position promoted from, position promoted to, and race of persons promoted within the Clarksdale Police Department. Burton also submitted plaintiff's Exhibit 9, which is a summary of the actions of the Board of Mayor and Commissioners of the City of Clarksdale, Mississippi, affecting the Clarksdale Police Department, as appears in the official minutes of the City of Clarksdale, Mississippi. The court notes that the following changes, beginning with the year 1971, should be made to plaintiff's Exhibit 10 in order for it to correlate correctly with plaintiff's Exhibit 9.

1971–The changes regarding Barney E. Barron, A. M. Martin, and E. F. Whittington involve no change in compensation or rank, but were only changes in title and should be deleted from Plaintiff's Exhibit 10 as a promotion.

1972–The changes in rank of Burton, Hopkins, King, Tackett, and Sims were automatic steps in grade, occurring after 6 months as rookie patrolmen and should be deleted as promotions. Herbie Ruleau's race should be reflected as "Indian" and not as white. The total number of promotions should be 5, of which 2 were white, 1 was black, and 2 were Indian.

1973–The change regarding Roy B. Nunley on February 17, 1973, was only a change in duties and involved no promotion or change

in compensation and, therefore, should be deleted as a promotion. There were 5 promotions, of which 4 were white and 1 was black.

1974–The changes regarding E. F. Whittington, III, on 2/4/74, Jimmy Carsley on 2/28/74, Charles Reynolds on 2/28/74, A. M. Martin on 3/28/74, A. W. Mooney on 3/28/74, Calvin Weeks on 3/28/74, E. F. Whittington on 3/28/74, Charles A. Oakes on 6/3/74, and Lawrence Gary Couey on 9/25/74, were only changes in title or reassignments involving no promotion or change in pay and, therefore, should be deleted as promotions. This leaves a total of 12 promotions during the year 1974, of which 1 was a white female, 2 were black, and 9 were white males.

1975–The change regarding Robert G. Mitchell was an automatic longevity increase involving no change in pay and no promotion and, therefore, should be deleted, leaving only three promotions, all of which were white males.

1976–The change regarding A. W. Mooney on 10/1/76 does not appear in Plaintiff's Exhibit 9, but Exhibit 10 indicates it to be only a change in title and not a promotion.

12. The following individuals, with their race, date of initial employment, and date of promotion, have been promoted from the rank of patrolman to the rank of sergeant, or its equivalent, since Burton was originally employed by the City of Clarksdale Police Department, the following being a compilation derived from plaintiff's Exhibit 10 after its revision to correlate more correctly with plaintiff's Exhibit 9 from which it was purportedly prepared:

| Name | Date of Promotion | Date of Initial Employment | Race |
|---|---|---|---|
| Robert G. Mitchell | Nov. 29, 1971 | July 1, 1964 | White |
| Herb Ruleau | Nov. 29, 1971 | April 22, 1971 | Indian |
| Charles Stringer, Jr. | Dec. 18, 1972 | Oct. 10, 1969 | Black |
| Charles Oakes | May 1, 1973 | April 1, 1971 | White |
| Calvin Weeks | Dec. 20, 1973 | Mar. 20, 1967 | White |
| A. W. Mooney [1] | Feb. 4, 1974 | Sept. 21, 1970 | White |
| Wilfred Turner | Feb. 4, 1974 | Nov. 20, 1972 | Black |
| Billy Ray Hawkins [2] | Mar. 28, 1974 | Dec. 27, 1971 | White |
| John Hopkins * | Mar. 28, 1974 | Oct. 1, 1971 | White |
| Joe K. Logan * | Mar. 28, 1974 | Jan. 20, 1972 | White |
| Roger Roark | Mar. 28, 1974 | Jan. 31, 1972 | White |
| Minnie Daughdrill | Dec. 16, 1974 | Jan. 1, 1972 | White |
| Jack Carpenter | Feb. 17, 1975 | Sept. 24, 1973 | White |
| John H. King | Feb. 17, 1975 | Oct. 1, 1971 | White |
| Paul G. Boyd * | April 15, 1976 | Mar. 1, 1974 | White |
| Ray Rikard [3] * | April 15, 1976 | Nov. 1, 1973 | White |
| Edward Lane | July 26, 1976 | Sept. 23, 1975 | Black |
| Felton Mathis | Feb. 28, 1977 | May 1, 1974 | Black |

* The finding of the court regarding these promotions is set forth in paragraph 2 hereinabove, these being the granting of the rank of sergeant to members of the Dog Squad.

[1] A. W. Mooney was originally employed Sept. 21, 1970, by the City of Clarksdale, Mississippi, Police Department, and transferred to the Coahoma County Sheriff's Office for a period of ten (10) months before transferring back to the Clarksdale Police Department. From his initial employment to his promotion on Feb. 4, 1974, he was continuously in law enforcement, including a stint as a military policeman in the United States Army.

[2] Billy Ray Hawkins was initially employed by a municipal police department on July 10, 1969, and worked continuously as a policeman for a period from then until December 27, 1971, at which time he was employed by the Clarksdale Police Department. During his tenure with the other police department, he attended the Mississippi Law Enforcement Training Academy and successfully completed the basic training course. Thus, at the time of his promotion, he had 4 years and 9 months' experience.

[3] Ray Rikard's experience consisted of employment as a police officer with the Batesville Police Department from Sept., 1968, to May, 1973, during which time he attended the Mississippi Law Enforcement Training Academy and successfully completed the basic training course. Thus, at the time of his promotion, he had 4 years and 8 months with the Batesville Police Department, plus 2 years and 5 months with the Clarksdale Police Department, for a total of 7 years and 1 months' experience as a police officer at the time of his promotion. Also as noted, his promotion was a result of his being a member of the Dog Squad.

---

13. The average experience, by race, of individuals promoted to the rank of sergeant, or its equivalent, can be mathematically determined and is as follows:

Indian—7 months

Blacks—2 years 3 months

White Females—2 years 11 months

White Males—4 years 1 month

Even if the experience of Mooney, Hawkins, and Rikard with other law enforcement agencies was not counted, the average for white males would be in excess of 3

years and 1 month relatively significant as an average.

14. The foregoing statistical analysis of the experience by race of those promoted does not permit an inference of racial discrimination against Burton in promotions. On the contrary, minorities are favored over white males in the area of experience as a qualification for promotion.

15. There was inconclusive evidence in this case on the ratio of minorities within the Clarksdale Police Department. The number ranged from 5 out of a total number of officers of 25 as estimated by Burton to 5 out of 32 officers as estimated by Chief Collins; i. e., from 20% to 16% of the police force is black. No inference can be drawn solely from these statistics since there was no evidence regarding the relevant labor force. Since Burton's employment, there have been 18 promotions from patrolman to the rank of sergeant, or its equivalent, of which 5 have been of minority individuals. Four were black; i. e., in a department having a minority membership of 16 to 20%, 22% of the promotions from patrolman to sergeant have been black and a total of 33⅓ % have been minority or female. There is no evidence that the promotional procedures have any disproportionate racial impact against blacks.

16. During the period of time commencing with 180 days preceding Burton's filing of his charge of discrimination with the Equal Employment Opportunity Commission through the date of this trial, Burton only applied for two positions, both applications being made subsequent to his filing of the charge. The first was the belated application filed on January 20, 1976, and referred to in paragraph 9 hereinabove. The second was the application for what appears to be a lesser position of Identification Specialist made on May 17, 1976. Burton made no other application for a change of position or promotion during the period pertinent to inquiry under Title VII.

17. Subsequent to the employment of Burton, 3 blacks have been hired, who, with less experience than Burton, have been promoted to sergeant within the Clarksdale Police Department. Burton's claim that all these promotions were the result of the influence of the late Mayor Nosef is unsubstantiated. Mayor Nosef died April 24, 1975, and two of these promotions occurred subsequent to that date during the tenure of Mayor Webster. In any event, the relevancy of this allegation of influence was not shown.

18. Ronnie Tackett is a white male police officer with a college degree, who was employed on November 1, 1970, only one month after Burton. No disciplinary action has ever been taken against Tackett, and no complaint has ever been made against him. Yet, he, like Burton (although white), remains as a Patrolman First Class, neither of them having received a promotion.

19. On numerous occasions, Burton has failed to apply for the position he now seeks through this action. The following is a list, by date, of the openings in the rank of sergeant, for which applicants were received, and the name of the individual receiving that promotion.

| Date | Title | Successful Applicant |
| --- | --- | --- |
| Feb. 17, 1975 | Criminal Investigator Sgt. | Jack Carpenter |
| Feb. 17, 1975 | Records Sgt. | John King |
| March, 1975 (Promotion received April, 1976, after completion of training with dog) | Dog Squad (Sgt.) | Ray Rikard and Paul Boyd |
| Jan. 19, 1976 | Desk Sgt. | Edward Lane (trial basis) |
| March 30, 1976 | Narcotics Detective | Felton Mathis (trial basis) |
| July 23, 1976 | Criminal Investigator Sgt. | Joe Logan |
| July 23, 1976 | Desk Sgt. | Edward Lane (permanent) |
| Oct. 22, 1976 | Criminal Investigator Sgt. | None |
| Feb. 24, 1977 | Criminal Investigator Sgt. | Felton Mathis |
| Mar. 15, 1978 | Field Sgt. | Gary Crocker |

Burton clearly failed to apply for any of the foregoing positions even though some of the positions were filled by blacks. He has not expressed any interest in the position of Records Sgt. or Desk Sgt. His only application for Criminal Investigator Sergeant was filed subsequent to the deadline, and of the two subsequent promotions to Criminal Investigator Sergeant, for which Burton did not apply, one was filled by a black. Burton made no application for the only Field Sergeant promotion that has been made since 180 days preceding the plaintiff's filing his charge with the EEOC.

20. On March 22, 1977, Burton was relieved of duty with the Clarksdale Police Department by the Mayor pending a determination of disciplinary action by the Board of Mayor and Commissioners as a result of an incident on March 19, 1977, in which plaintiff was charged with failing to prevent an attack by an assailant on a pregnant woman holding a young child, failing to attempt to subdue the assailant, and failing to assist a fellow officer. Burton was informed that a determination of any disciplinary action would be made at a meeting of the Board of Mayor and Commissioners on March 24, 1977, at which meeting Burton was invited to attend and to present evidence. At that meeting, it was reported that Commissioner Espy, a black member of the governing board of the City of Clarksdale, could not be present, and had asked that the matter be continued to a subsequent meeting when all members of the Board could be present. The subsequent meeting of the Board occurred March 30, 1977. The official minutes of the City of Clarksdale, Mississippi, indicate that at that meeting, upon the objection of Patrolman Burton, through his attorney, to the consideration by the Board members of the written statements of witnesses, the Board and Burton agreed that he would present by April 4, 1977, at a regular meeting of the Board, written statements or recordings by others concerning this matter. The minutes also indicate that pending a final determination of any disciplinary action, Burton would be reassigned from the patrol beat to some other duty. The minutes indicate that this was agreed to by Burton and his attorney. The additional evidence proposed to be presented on April 4, 1977, was never received. Burton was placed on a walking beat downtown. The entire matter simply remained in limbo until the latter part of February, 1978, at which time Burton's attorney, by letter, requested that Burton be returned to his patrol car and denied that the walking beat was at the request of Burton's attorney. As a result of all this, no loss of pay during his suspension from service or other disciplinary action was imposed against Burton unless it can be said that the reassignment of Burton to a walking beat was a form of discipline. It is apparent from the proof in this case that the City Board did not consider it so, but, in fact, considered it a mutually agreeable arrangement pending a final determination of disciplinary action which was never made. Burton made no effort to rectify any misunderstanding until ten months later.

21. On or about September 2, 1977, a complaint was filed against Burton by Felton Mathis, a black officer with the Clarksdale Police Department, alleging that Burton failed to assist him in subduing an assailant and making an arrest. No action was ever taken by the City on this complaint. This present action was then pending before this Court and Burton on September 19, 1977, filed in this cause a Motion for Temporary Restraining Order, together with his affidavit alleging that the City was retaliating against him for filing this action by threatening him with unwarranted disciplinary action. Nothing was ever done with this Motion beyond its filing, and no disciplinary action was ever taken against Burton.

22. The disciplinary actions taken against white officers and used by Burton as a basis for his claim of racial discrimination against him in disciplinary action, are the suspension and subsequent reinstatement with pay of Officer Roark in 1978, the demotion from Captain to Sergeant and the 30-day suspension of Officer Martin in 1977, and the demotion of Travis D. Middleton,

now Assistant Chief. The incident involving Assistant Chief Middleton occurred prior to Burton's employment. Both the Roark incident and the Martin incident occurred subsequent to the filing by Burton of his charge before the Equal Employment Opportunity Commission. All of the disciplinary action taken against these white officers was more severe than any of that meted out to Burton, with the exception of the reinstatement with pay of Roark. In that matter, Roark shot and wounded a fleeing felon. Roark was suspended pending an investigation; and, the Coahoma County Grand Jury having investigated the matter and returned a no bill, the Board of Mayor and Commissioners ordered his reinstatement with pay.

23. Burton complains of not being allowed to take additional training and educational courses furnished by or through the Clarksdale Police Department. Specifically, Burton has not attended the Mississippi Law Enforcement Training Academy basic training course. Burton asserts that he is the only officer in the department who has not completed this course. However, Burton is the only black officer who has not attended the academy; five white officers also have not attended. In any event, Burton has never complained to his superiors in the department and has never requested that he be allowed to go. On the contrary, Burton admits that he did not want to attend the academy because it would disrupt his college attendance.

24. Burton was granted special privileges permitted no other officers during a period of more than a year in order to facilitate his college attendance at Delta State University in Cleveland, Mississippi. During that period of time, Burton was allowed to stay on the same shift rather than being required to rotate monthly to a different shift with all of the other officers.

25. Burton, on several occasions, failed to attend mandatory training courses required by the Clarksdale Police Department. In 1972, Burton was absent from all seven training classes required of the Police Department personnel who had not attended the police academy. Again, a course in cardiopulmonary resuscitation conducted by the Northwest Mississippi Regional Medical Center was required of all police officers. Burton failed to attend this course.

26. Except for Patrolman Hawkins and Sgt. Hopkins attending an accident procedure school, Burton does not specify any other training which was refused him. He makes the general statement that he has been refused training. Extra training has been received by the other black officers.

27. Burton has received all longevity increases and other applicable pay increases received by all other patrolmen. He has been denied no wages or other emoluments granted to others of the same rank in the Clarksdale Police Department.

28. The City of Clarksdale, Mississippi, Police Department, has not discriminated against Burton by reason of his race in the matter of disciplinary actions taken against him.

29. The failure of Burton to be promoted from the rank of Patrolman First Class has not been the result of any racially discriminatory intent on the part of the City of Clarksdale Police Department, or of any of the individual defendants. The failure of Burton to receive a promotion has not been the result of any racial discrimination against him. In summary, Burton in March, 1974, took the test for Captain, and as a result, was not considered for promotion to Sergeant as were other applicants. No further incident or alleged act of discrimination occurred. On July 4, 1975, Burton engaged in an altercation with a white officer while on duty and received a 30-day suspension without pay, prompting him to file a charge of discrimination with the EEOC. Burton made no further attempts to seek a promotion by the normal procedure of submitting written applications in response to requests or notices placed on bulletin boards and other obvious locations within the Police Department. Those two occasions were the belated application filed on January 20, 1976, after a deadline of 8:00 A.M., January 19, 1979, and the application for the job of Identification Specialist. The

court infers no racial discrimination against Burton under these circumstances.

30. Burton has not been discriminated against by reason of his race in being provided the opportunity for additional training and educational courses offered by or through the City of Clarksdale Police Department.

## CONCLUSIONS OF LAW

1. In 1972, the equal employment provisions of the 1964 Civil Rights Act, Title VII (42 U.S.C. § 2000e), were amended to bring state and local governments within the scope of the Act, which prior to March 24, 1972, did not apply to municipalities, such as the City of Clarksdale, Mississippi. The amendments did not apply retroactively.

2. A complaint under Title VII must be filed with the Equal Employment Opportunity Commission within 180 days of the alleged discriminatory act. "A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977).

3. The City of Clarksdale Police Department is the only "employer" of Burton within the meaning of Section 701 (Title VII) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. No other defendant is an employer within the meaning of the Act, and, therefore, all other defendants should be dismissed from this Title VII action.

4. There has been no showing of discriminatory intent on the part of the individual defendants and, therefore, they should be dismissed entirely from this cause. A showing of discriminatory intent or purpose is necessary before Burton can establish a violation of his rights under the Fourteenth Amendment, or 42 U.S.C. § 1981. *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).

5. Discriminatory purposes or intent need not be proved under Title VII of the Civil Rights Act of 1964 as amended.

*Scott v. City of Anniston, Ala.*, 597 F.2d 897 (5th Cir. 1979).

6. Subjective employment procedures are not violative of Title VII per se, but Title VII is applicable only when such practices result in discrimination. *Hester v. Southern Railway Co.*, 497 F.2d 1374 (5th Cir. 1974).

7. In order to state an actionable claim of employment discrimination, the plaintiff must demonstrate a causal nexus between his race and the treatment he received from his employer; that he has been treated differently from other employees because of his race; and if he has been treated no differently than employees of other races, however unfair he regards the treatment, he has no claim of discrimination. Title VII, Civil Rights Act of 1964, § 701 et seq., as amended; 42 U.S.C. § 2000e et seq.

8. The central focus of the inquiry in a case such as this, is always whether the employer is treating some people less favorably than others because of race. *Teamsters v. United States*, 431 U.S. 324 at 335, 97 S.Ct. 1843 at 1854, 52 L.Ed.2d 396 (1977).

9. In a non-class claim of employment discrimination, the plaintiff carries the initial burden of proving a prima facie case of discrimination. *Parson v. Kaiser Aluminum & Chemical Corp.*, 575 F.2d 1374 (5th Cir. 1978).

10. Under Title VII, a plaintiff carries the initial burden of showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under Title VII. *Furnco Construction Corp. v. Waters*, 438 U.S. 567 at 576, 98 S.Ct. 2943 at 2949, 57 L.Ed.2d 957 (1978).

11. To make out a prima facie claim under Title VII, the plaintiff must show, among other things, "that he applied and was qualified for a job for which the employer was seeking applicants . . ." *McDonnell-Douglas Corp. v. Green*, 411 U.S.

792 at 802, 93 S.Ct. 1817 at 1824, 36 L.Ed.2d 668 (1973).

12. A McDonnell-Douglas prima facie showing is not the equivalent of a factual finding of discrimination, but is simply proof of actions by the employer from which the court *may* infer discriminatory animus. It does not compel a conclusion of discriminatory intent. *Furnco Construction Corp. v. Waters, supra.* A showing by the employer that its action was based on a legitimate nondiscriminatory consideration compels a contrary conclusion.

13. The adverse inference from a prima facie showing is dispelled by the articulation by the employer "of some legitimate nondiscriminatory reason for the employee's rejection." *McDonnell-Douglas Corp. v. Green,* 411 U.S. at 802, 93 S.Ct. at 1824.

14. Even if Burton in this case had made a prima facie showing that he, as a member of a racial minority, applied, was qualified, but was rejected for the position of Sergeant, for which the Clarksdale Police Department was seeking applications, that the City either accepted someone else for the position or, after rejecting the plaintiff, continued looking for someone else for the position, the Court is not required to disregard other circumstances and conclude that the Clarksdale Police Department discriminated against the plaintiff in not granting him a promotion. On the contrary, the Clarksdale Police Department rebutted any prima facie showing that could be said to have been made by showing that the failure to promote the plaintiff was, on the first occasion of his application, due to his lack of qualification for the position of Captain (two levels above the plaintiff's rank); on another occasion, due to the belated receipt of his application; and on a third occasion, due to his obvious lack of qualification such as the ability to take shorthand.

15. ". . . [T]he obligation imposed by Title VII is to provide an equal opportunity for *each* applicant regardless of race, without regard to whether members of the applicant's race are already propor-tionately represented in the work force. . . ." *Furnco Construction Corp. v. Waters,* 438 U.S. at 579, 98 S.Ct. at 2951.

16. Statistical evidence of a pattern of discrimination is not determinative of an employer's reason for the action taken against the individual grievant. *Terrell v. Feldstein Co., Inc.,* 468 F.2d 910 (5th Cir. 1972).

17. Although the plaintiff may have been qualified for promotions, his failure to apply precludes any finding of racial discrimination. *Long v. Sapp,* 502 F.2d 34 at 38 (5th Cir. 1974).

18. "Initiative is a key element of a supervisory job; . . ." and where there is an absence of evidence that other blacks have been denied promotions, the court cannot conclude that Burton's failure to apply for openings can be excused. *See Buckner v. Goodyear Tire & Rubber Co.,* 339 F.Supp. 1108, 1121 (N.D.Ala.1972), *aff'd.* 476 F.2d 1287 (1973).

19. Although the requirements of a prima facie case will vary from case to case, Burton's failure in this case to apply properly for the position of Sergeant is clearly fatal to his complaint. *See Wright v. Stone Container Corp.,* 524 F.2d 1058 (8th Cir. 1975).

20. In a bench-tried case of allegations of discriminatory employment practices, it is the responsibility of the court to determine, from a totality of circumstances and proof thereof, whether plaintiff was discriminated against in violation of equal employment provisions of the Civil Rights Act. *Richard v. McDonnell-Douglas Corp.,* 395 F.Supp. 1363 (D.C.Mo.1975), *reversed on other grounds,* 469 F.2d 1249 (8th Cir. 1972). The issue is essentially one of fact to be resolved by the Trial Court on a case by case basis. *Bradford v. Sloan Paper Co., Inc.,* 383 F.Supp. 1157 (N.D.Ala.1974).

21. Principles of res judicata are fully applicable to actions brought under the Federal Civil Rights Act. *Preiser v. Rodriquez,* 411 U.S. 475 at 497, 93 S.Ct. 1827

at 1840, 36 L.Ed.2d 439 (1973). The judgment of the Circuit Court of Coahoma County, Mississippi, in Cause No. 6904 on the docket of that court is res judicata as to the factual determination of the good faith and cause behind the disciplinary action taken against Burton for the incident occurring July 4, 1975.

22. This court cannot infer from the evidence in this cause that Burton was discriminated against simply from the fact that he is black and that whites with less seniority have been promoted. Blacks with less seniority than both Burton and other whites have been promoted, and whites with seniority equal to that of Burton remain patrolmen. Any conclusion of racial discrimination against Burton would have to be drawn from the actual circumstances of each promotion, if any, sought by him. The circumstances in this case do not permit such a conclusion.

23. Burton's dissatisfaction with his present status cannot be remedied by this court unless this court can find as a matter of fact that his present status is a result of racial discrimination by the City of Clarksdale Police Department, a finding which this court concludes it cannot make upon the proof in this case.

### CONCLUSION

The individual relief sought by Burton in his complaint is hereby denied.

The clerk is directed to enter final judgment against Burton on his individual claims.