Wilbert **BRADFORD** and Ronald McCall et al., Plaintiffs,

v.

**SLOAN PAPER COMPANY, INC.,** a corp., Defendant.

Civ. A. No. 73–G–1098–S.

United States District Court, N. D. Alabama, S. D.

July 23, 1974.

Demetrius C. Newton, Birmingham, Ala., for plaintiffs.

Charles Kelso, Fisher & Phillips, Atlanta, Ga., Richard F. Ogle, Denaburg, Schoel, Meyerson & Ogle, Birmingham, Ala., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GUIN, District Judge.

This is an action by two black former employees of defendant, Sloan Paper Company, Inc., of Birmingham, Alabama. Plaintiffs allege racial discrimination in their employment in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–1 et seq., and in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1981. This court has jurisdiction by virtue of 42 U.S.C. § 2000e–5(f), 42 U.S.C. § 1981, and 28 U.S.C. § 1343(4). Jurisdiction and venue are not contested.

Plaintiffs filed charges of racial discrimination with the Equal Employment Opportunity Commission (EEOC) which investigated the charges and issued its report finding probable cause in favor of the plaintiffs. Conciliation by the commission was unsuccessful, and plaintiffs timely filed this action originally as a class action. The class action allegations have been dismissed by agreement of the parties, and the case now involves only alleged discrimination against the two individual plaintiffs personally.

■■  The five issues in this case involve alleged racial discrimination toward the plaintiffs in (1) wages, (2) promotions, (3) restroom facilities, (4) harassment and disparate discipline, and (5) discharge from employment. It is settled that the question of whether an employer was guilty of discriminatory employment practices is basically one of fact for determination on a case-by-case basis. United States v. H. K. Porter Company, 296 F.Supp. 40 (N.D. Ala.1968). In addition, the burden is on the plaintiff to prove that the defendant's practices stemmed from racial prejudice. Green v. McDonnell-Douglas Corp., 318 F.Supp. 846 (E.D.Mo.1970); Thomas v. Sloan Paper Co., Civil No. 4184–N (N.D.Ala., filed May 2, 1974).

The plaintiffs in this action, Wilbert Bradford and Ronald McCall, both mem-

bers of the Negro race, allege that they suffered racial discrimination in their employment by defendant, Sloan Paper Company, at its official warehouse in Birmingham, Alabama. Bradford was employed by Sloan on July 1, 1964, as a warehouse worker. He was discharged by Sloan on July 8, 1971. During this time Bradford worked as a warehouse worker and forklift truck driver. Mc-Call was employed by Sloan Paper Company at its Birmingham warehouse on January 19, 1966, as a warehouse handler and stockman and later as a truck driver. He was discharged on October 18, 1972. Other findings of fact will be indicated as pertinent.

■ The first issue deals with the allegation that plaintiffs were being paid less than whites doing the same work. The court finds that complaint to be unfounded. Since plaintiffs made as much or more than any white warehousemen or drivers at any point in time, the only possible reference could be to Horace Ramey, the assistant manager at the time plaintiffs were employed. It is admitted that Ramey, who had worked at Sloan for less time than plaintiffs, received higher wages than either Bradford or McCall. However, the circumstances involved in the determination of the salary of Ramey included more than just the fact that he is white. Before going to work for Sloan, Ramey was employed with another paper company where he acquired experience in the type of work that he does at Sloan. Furthermore, he was hired as assistant warehouse manager which in itself entails greater responsibility and thus justifies higher wages. Bradford and McCall may not have known of Ramey's position at the time of their employment, and Ramey may have been engaged in the same basic type of work they were; but he was, nonetheless, the assistant manager, and was entitled to wages commensurate with that position.

■ Plaintiffs' second contention is that racial discrimination was the basis for their not being promoted ahead of white employees. Plaintiff Bradford also complains that racial bias was inherent in Sloan's failure to give him the job of salesman, which he sought. It is true that plaintiffs were not promoted to the position of assistant warehouse manager. It is also true that Horace Ramey, a white man who had no prior experience with Sloan Paper Company, was hired as assistant warehouse manager. However, Ramey had worked for four years with the Graham Paper Company, serving as assistant warehouse manager for at least a portion of that period. Furthermore, the employers at Sloan were apparently of the opinion that the assistant warehouse manager there needed to be one who was forceful and aggressive and who would be able to "sweat his labor." Whether those qualifications were necessary or not is certainly debatable, but that Ramey possessed these qualities is beyond question.

It should also be noted that there were other blacks employed, with even more seniority than either plaintiff, who would have been in an even better position for promotion than Bradford or McCall. Since the issues of this case are limited to the named plaintiffs, it is incongruous that they should claim racial discrimination because they were not promoted ahead of all other employees, including other blacks. Since the discharge of Bradford and McCall, Ramey has been promoted to warehouse manager and a black long-time employee, Bernard Cargle, has been assigned the position of assistant warehouse manager. Certainly Cargle was much more in line for the position than either Bradford or McCall at the time Ramey was hired. The court finds that there was no discrimination involved in the failure to promote either plaintiff to the position of assistant warehouse manager.

■ Nor is there any evidence to indicate that plaintiff Bradford was qualified for the position of salesman. Bradford's qualifications consisted of experience in selling insurance for a year before working for Sloan, apparently un-

successfully, and education at the Sales Training Institute in Birmingham. The training he received from the institute was obtained on a part-time basis through classroom work and correspondence. He completed his training in one and one-half years and actually did not graduate until after his discharge by Sloan. These qualifications were not sufficient to justify Bradford's complaint that racial discrimination was the real basis for his not receiving the salesman's job.

■ The third issue is concerned with alleged segregation of restroom facilities at Sloan Paper Company. The court finds no basis for this allegation. In the new Sloan warehouse there are two restrooms, one marked "men" and the other marked "women." It is undisputed that during the brief time that a female employee worked in the warehouse she used the women's restroom and all the men, regardless of race, used the men's restroom. There is no evidence that any blacks at all, much less either Bradford or McCall, were ever instructed to use only the men's restroom. The evidence reveals that all employees were to use the women's restroom if the men's room was occupied. The evidence also shows that members of both races did in fact use both restrooms.

■ The fourth issue propounded by plaintiffs is that they received harassment and disparate discipline because of their race. Both plaintiffs claim they were forced to work without helpers in some jobs that white employees generally had help in. Plaintiffs also assert that they and other blacks were forced to work harder than whites. The court finds that, while plaintiffs did suffer mistreatment, it was not directed against them because of their race. Other employees, including James "Rick" Sweeney and Bobby J. Woodall, both white, felt that they were overworked and harassed. Sweeney and Woodall both quit as a result of these abuses, largely from Horace Ramey.

Plaintiffs' complaints in this regard may not be valid, but they are real. The problem seems to lie more with Ramey and his personality than with racial prejudice. As indicated, Ramey was prone to "sweat his labor" and was hired in part for his aggressive coercive abilities to extract work from the laborers. It is admitted that Ramey drove them all hard. It is also admitted that Ramey has a very quick temper and even engaged in threats of physical violence to the plaintiff McCall. Ramey's actions are in large part indefensible and unwarranted, but they are not founded in racial bias. He was equally offensive to members of both races.

We now come to the fifth and major issue, which deals with the discharge of Bradford and McCall. Wilbert Bradford was fired July 8, 1971, after an argument with Horace Ramey. Bradford had been instructed by Ramey to help Bobby Woodall, a white employee who was getting up orders of paper for Sloan's customers. Bradford began bickering and arguing, stating how much work he could do compared to the other employees. When Bradford made no effort to begin work, even after several opportunities, Ramey "punched his time card" and Bradford was fired.

■ Bradford insists that he did not know that Ramey was the assistant warehouse manager at the time he was discharged and thus did not want to take orders from Ramey until he was so informed. While the evidence supports the position taken by the management at Sloan that Bradford should have known, the court finds that Bradford did not in fact know that Ramey was his supervisor. No notice was posted concerning Ramey's position; nor were the employees so informed, either by Mr. Pollitt, the manager at Sloan, or by Mr. Blankenship, the warehouse manager. However, when Ramey was promoted to warehouse manager on November 17, 1971, a notice was placed in the warehouse announcing that fact. Thus, the

court finds that plaintiff Bradford was justified in not following orders from Ramey until he knew that Ramey was his superior. The issue is not, however, whether Ramey was justified in firing Bradford, but whether the discharge was racially motivated. Plaintiff contends that the discharge came as a result of the complaint he filed with EEOC in December 1970. If this had been proved to be so, plaintiff Bradford would have a well-founded claim. The facts, however, belie that contention. Bradford was fired July 8, 1971. There is not a shred of evidence which indicates that the charges filed with EEOC were made known to Sloan before February 21, 1972, some eight months after Bradford was fired. There is nothing else in the record to give credence to Bradford's claim of racially motivated discharge.

■ The facts surrounding the discharge of plaintiff Ronald McCall are somewhat different. McCall was fired October 18, 1972. During the last four months of his employment with Sloan, he worked as a long-distance driver, making deliveries in Mississippi on an all-day trip every two weeks. McCall had been accused of taking too long on these trips and had received two formal warnings. Between July and October 1972 he averaged 17 hours and 25 minutes per trip, including a high of over 20 hours on July 26, on six trips to Meridian, Mississippi. Don Scott, a former truck driver on the same route, had averaged about 14 hours for this trip. The succeeding drivers averaged 14 hours and 28 minutes in five trips. Defendant's officers and managers insist that this was one of the key factors in the discharge of McCall. However, the last trip McCall made was on October 4, 1972. That trip took him 15 hours and five minutes, and was almost two hours less than his previous best time.

While the evidence does not show that McCall was the best possible driver, it does indicate that he was beginning to show improvement. The fact that he was fired after vast improvement of his time on his last trip lends little credence to defendant's position that this was the key reason for firing him. The court is of the opinion, and so finds, that McCall was fired because he was beginning to do the job in a satisfactory way, not because he had been doing it in an unsatisfactory way.

On October 17, the day before he was fired, McCall made deliveries in Anniston, Gadsden and Albertville, Alabama, returning to the warehouse about 5:00 P.M. Ramey then instructed McCall to make a city delivery, which he did over protest. When he returned to the warehouse, McCall gave Ramey a chance to indicate what time to come in the next morning if he expected him early. McCall was attending school on Tuesday and Thursday nights at Jefferson State Junior College and was already running late. Thus, when he received no word from Ramey, who was busy but in plain view at the time, McCall assumed that the early run to Mississippi would not be made the next morning and that he could come in at the regular time. He waved to Ramey to indicate that he was leaving and left with those assumptions settled in his mind. When McCall arrived at work the next morning, October 17, he noticed that the truck was gone. Upon inquiring, he learned that Ramey and another employee had made the trip to Mississippi. McCall worked until around 3:00 P.M., when he was told by Raymond Pollitt, the manager of Sloan Paper Company, that he was fired. Pollitt also told him to be off the premises within 10 minutes. McCall was told that he was being fired because his work was unsatisfactory.

These facts concerning McCall's discharge, as found by the court, are contradicted in part by the witness Ramey. However, the court has carefully considered Ramey's testimony and finds that it does not deserve to be given any weight and is entirely unworthy of credence.

It is contended by the defendant that McCall did not have to be told to be in early the next morning, since the run

was regularly scheduled. However, two basic factors plague defendant's position. First, even on the longest trips there was sometimes less cargo to be delivered, which would allow the driver to leave later than usual. Secondly, the evidence indicates that McCall was justified in not being certain that the Mississippi run would be made on Wednesday, October 18. His previous runs had been as follows: July 26, Wednesday; August 9, Wednesday; August 23, Wednesday; September 7, Thursday; September 26, Tuesday; October 4, Wednesday. Thus his last three trips had all been made on different days of the week. It is only reasonable to accept McCall's testimony that he was not sure he was to go to Mississippi the next day; and when Ramey failed to indicate what time he was to come in, McCall was justified in believing he could come in later. The facts are clearly contrary to the defendant's position that the route was always run on the same day.

The key factor in McCall's discharge would have to be that McCall had filed charges with EEOC. These charges were revealed to Sloan Paper Company in February 1972. McCall testified, and the evidence supports him, that pressure was applied with increasing severity from the time the charges were filed with the EEOC to the time of his discharge. The court finds that this was the prime motivation for the discharge, which is clearly a violation of Title VII of the Civil Rights Act. 42 U.S.C. § 2000e-2(a).

▮ Plaintiff McCall seeks restitution in the form of back pay, attorneys' fees and reinstatement of employment with Sloan Paper Company. The court directs that he be allowed to return to work at Sloan if he still desires to do so. 42 U.S.C. § 2000e-5(g). McCall is entitled to reemployment in any vacancy which occurs for which he is qualified. Franklin v. County School Board of Giles County, 360 F.2d 325 (4th Cir. 1966). He is to receive wages commensurate with his experience, training and ability, at a rate of not less than $2.50 per hour,

which is what he was making when he was discharged.

▮ Under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-5(k), the court may, in its discretion, award appropriate attorneys' fees. Rock v. Norfolk & Western Ry., 473 F.2d 1344 (4th Cir. 1973). Upon a proper showing by plaintiff McCall, attorneys' fees will be awarded as part of the costs of this case. Tidwell v. American Oil Company, 332 F.Supp. 424 (D.Utah 1971); Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).

The issue of whether plaintiff McCall is entitled to back pay is, at the least, troublesome. In the light of the very recent decision of Pettway v. American Cast Iron Pipe Company, 494 F.2d 211 (5th Cir. 1974), it is evident that the scope of a court's discretion to deny back pay is narrow and that only special circumstances will justify failure to award such back pay when a plaintiff has sustained economic loss from a discriminatory employment practice. After due consideration, this court is convinced that such "special circumstances" exist in this case. There is no doubt that McCall suffered some economic loss as a result of his discharge. During the first six months he was unemployed he drew unemployment compensation from the state of Alabama at the rate of $60.-00 per week. This money was not subject to taxation or F.I.C.A. payments. After he had received this compensation for the maximum amount of time he was eligible, McCall immediately secured employment with the Western Auto Parts Distribution Center at the rate of $92.00 a week. After approximately six months of employment there, McCall secured the job he presently holds with Oxmoor Press. His salary there has ranged from $2.80 an hour when he started to the $3.20 he is presently receiving, or an average of about $3.00 per hour.

▮ Based on a 40-hour work week at $2.50 per hour, plaintiff McCall would have earned approximately $9,100.-

00 at Sloan in the 21 months since his discharge. In addition to his $1,560.00 from unemployment compensation, McCall has earned about $2,392.00 from Western Auto and $4,680.00 from Oxmoor Press, based on a 40-hour work week. This is a total of $8,632.00 in compensation he received during the period since his discharge. The total damages of $368.00, which is the difference between what he made and received in unemployment and in salary, and what he would have made at Sloan had he remained at $2.50 an hour, plus six per cent interest, is almost *de minimis* and is the maximum to which McCall could possibly be entitled. However, the court feels that the evidence supports a finding that McCall did not actively seek employment during the time that he drew unemployment compensation. It is a settled rule of damages that recovery may not be made for losses which the injured party might have prevented by reasonable efforts. 25 C.J.S. Damages § 33 (1966). Texas Co. v. Christian, 177 F.2d 759 (5th Cir. 1949). The court is not convinced that McCall expended such reasonable efforts in securing employment after his discharge. The record is very clear that at precisely the time McCall's benefits ceased, he was able to procure satisfactory employment. Thus the court is convinced that the evidence shows no good faith effort on the part of McCall in seeking employment during that initial six-month period. The court is further persuaded that these "special circumstances" are sufficient to justify a denial of back pay.

In summary, the court finds no racial discrimination toward either plaintiff in wages, promotions, harassment or restroom facilities. Nor was the firing of plaintiff Bradford motivated by discriminatory racial bias. Plaintiff McCall was discharged for racial reasons and is to be reinstated in his employment with Sloan Paper Company. He is to receive no back pay, but is, on a proper showing, entitled to attorneys' fees.