Argued and submitted July 10, affirmed and remanded for new trial October 23, 1984

# HOLIEN,
*Respondent on review,*

*v.*

# SEARS, ROEBUCK AND CO.,
*Petitioner on review,*

*and*

# BLASKO,
*Defendant-Respondent.*

(A7905-02100; CA A22566; SC S30513)

689 P2d 1292

Mildred J. Carmack, Portland, argued the cause for petitioner on review. With her on the petition and brief were Mark H. Wagner and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Timothy J. Vanagas, Gresham, argued the cause and filed the briefs for respondent on review. With him on the response to the petition was John J. Pefley, Gresham.

No appearance for defendant-respondent Paul Blasko.

Elden M. Rosenthal, of Rosenthal & Greene, P.C., Portland, filed a brief amicus curiae on behalf of the American Civil Liberties Union of Oregon.

Cynthia L. Barrett, of Fellows & McCarthy, Portland, filed a brief amicus curiae on behalf of the Oregon Women's Political Caucus.

Charles J. Merten, of Merten & Fink, Portland, filed a brief amicus curiae on behalf of the Oregon Trial Lawyers Association.

David W. Morthland, of Miller, Nash, Wiener, Hager & Carlsen, Portland, filed a brief amici curiae on behalf of Louisiana-Pacific Corporation; School District No. 1, Multnomah County, Oregon; U.S. Bancorp; and Willamette Industries, Inc.

Richard A. Braman, Office of City Attorney, Portland, filed a brief amicus curiae on behalf of the City of Portland.

Paula B. Weiss, of Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland, filed a brief amici curiae on

behalf of Oregon Small Business Advocates; Oregon National Federation of Independent Business; Oregon Association of Hospitals; Oregon Bankers Association; Pacific Coast Association of Pulp and Paper Manufactures; Food Employers, Inc.; Oregon Retail Council; National Electrical Contractors Association; Portland Chamber of Commerce; Associated Oregon Industries; Tektronix, Inc.; Metropolitan Hospitals, Inc.; Northwest Natural Gas Company; Weyerhaeuser Company; Freightliner Corporation; Southern Pacific Transportation; Consolidated Metco, Inc.; Fleetwood Enterprises, Inc.; Consolidated Freightways; Fred Meyer, Inc.; and The Oregonian Publishing Company.

Henry H. Drummonds, of Kulongoski, Heid, Durham & Drummonds, Portland, filed a brief amici curiae on behalf of Oregon AFL-CIO and Oregon Education Association.

Larry K. Amburgey, David H. Wilson, Jr., and Amy Segel, of Bullard, Korshoj, Smith & Jernstedt, P.C., Portland, filed a brief amici curiae on behalf of Agripac, Inc.; AT&T Technologies, Inc.; Bingham Willamette Company; Champion International Corporation; Mid-Columbia Medical Center; Nike, Inc.; Northwest Packers Industrial Association; Omark Industries; The Oregon Bank; Oregon Savings and Loan League; Oregon Trucking Association; Pacific Fruit & Produce Co.; Pacific Northwest Tell Telephone Company; Pacific Western Bank; Pay Less Drug Stores Northwest, Inc.; Portland General Electric Company; Standard Insurance Company; Stayton Canning Company; Sun Studs, Inc.; Timber Operators Council, Inc.; Tradewell Stores, Inc.; United Grocers; and West Coast Grocery Company.

JONES, J.

## JONES, J.

In this case, plaintiff sued for damages for employment discrimination under ORS 659.030(1) and 659.121(1), and also sought damages for the common law tort of wrongful discharge. Plaintiff appeals from a judgment for defendants. The trial court found no liability or damages under the statutory claim and granted defendant Sears, Roebuck and Co. (Sears) a summary judgment on the claim alleging common law wrongful discharge. The Court of Appeals reversed and remanded the case for retrial on the common law wrongful discharge claim. Defendant Sears petitions this court to review and reverse the decision of the Court of Appeals.

The complaint alleged three separate "causes of action": The first claim alleged employment discrimination under ORS 659.030(1) and 659.121(1); the second alleged common law wrongful discharge; and the third, not involved in this appeal, alleged intentional infliction of emotional distress. The first two claims were based on essentially the same allegations of fact, except that the second claim alleged that defendants acted maliciously.

The complaint alleged that plaintiff was an employe of defendant Sears and her supervisor was defendant Blasko. From approximately May 3 to June 6, 1978, defendant Blasko was alleged to have engaged in acts of sexual advances and harassment directed toward plaintiff. Plaintiff claims that her termination was tortious because it was "motivated solely because plaintiff would not submit to [her supervisor's] sexual advances and sexual harassment," and because plaintiff was "fulfilling her right to be gainfully employed without being subject to said sexual advances and sexual harassment." Plaintiff alleges that because she resisted her supervisor's sexual advances she was given poor evaluations, was denied pay raises and was finally discharged. All three claims were submitted to a jury, which returned its separate verdict on each of the three claims. The verdict on the first claim was:

"1.   Did defendants engage in statutory employment discrimination against plaintiff as alleged in plaintiff's first claim for relief which was the proximate cause of damage to plaintiff?

"Answer:   'Yes' or 'No'

"(a)    Defendant Sears    No

"(b)    Defendant Blasko   Yes

"If answer to either (a) or (b) is 'yes', proceed to Question 2. If 'no' to both, do not answer Question 2

"2.   What were plaintiff's damages, if any?

"Answer   $    $0.00

"(total cannot exceed the sum of $525.60."

On the second (common law) claim:

"1. Did defendants wrongfully discharge the plaintiff from employment as alleged in plaintiff's second claim for relief which was the proximate cause of damage to plaintiff?

"Answer:   'Yes' or 'No'

"(a)    Defendant Sears    Yes

"(b)    Defendant Blasko   No

"If answer to either (a) or (b) is 'yes', proceed to Question 2. If 'no' to both, do not answer Question 2.

"2.    What were plaintiff's total damages, if any?

| "Answer: | (a) | medical expense (cannot exceed $535.00) | $ 0.00 |
| | (b) | lost wages (cannot exceed $525.60) | $ 292.00 |
| | (c) | general damages (cannot exceed $100,000.00) | $ 500.00 |
| | (d) | punitive damages, if any, against defendant Blasko | $ 0.00 |
| | (e) | punitive damages, if any, against defendant Sears (total punitive damages cannot exceed $250,000.00)" | $25,000.00 |

On the third claim:

"1.   Did defendants engage in the intentional infliction of emotional distress as alleged in plaintiff's third claim for relief which was the proximate cause of injury to plaintiff?

"Answer:   'Yes' or 'No'

"(a)   Defendant Sears        No
"(b)   Defendant Blasko       No

"If answer to either (a) or (b) is 'yes', proceed to Question 2. If 'no' to both, do not answer Question 2."

Following the verdict, the trial court found in favor of both defendants on the first claim. The trial court stated in its written findings:

"(1) Plaintiff is probably not entitled to jury trial with respect to the first claim for relief and that claim is probably a matter to be determined by the court. On that basis, the Court finds in favor of both defendants and against plaintiff on the first claim for relief.

"(2) Even if plaintiff is entitled to a jury trial on the first claim for relief, the jury verdict with respect to the first claim for relief has the legal effect of being a verdict for both defendants and against plaintiff and is received as such by the Court.

"(3) Alternatively, if the jury were an advisory jury only, then the Court adopts and receives its verdict with respect to plaintiff's first claim for relief as a verdict in favor of both defendants and against plaintiff.

"(4) No attorney fees are awarded to either party."

Judgment was then granted in favor of defendants on the first and third claims and for plaintiff on the second claim against defendant Sears. Defendant Sears moved for judgment notwithstanding the verdict or, alternatively, a new trial on the second claim under ORCP 63. The motion for a new trial was allowed because of an improper jury poll.[1] Sears then moved for summary judgment on the second claim pursuant to ORCP 47, and that motion was granted. As a result, a final judgment was entered in favor of both defendants on all claims.

Plaintiff's main contention is that the trial court erred when it granted Sears a summary judgment on the second claim after the motion for a new trial had been granted. In support of the motion for summary judgment, Sears argued that there is no common law action for wrongful discharge when there is a statutory remedy for discrimination in employment.

---

[1] Plaintiff concedes that the order granting defendants' motion for a new trial was proper, based upon our decision in *Sandford v. Chevrolet Division of General Motors*, 292 Or 590, 642 P2d 624 (1982).

This court's decision in *Nees v. Hocks,* 272 Or 210, 536 P2d 512 (1975), provided the first exception to the general "at-will" rule of employment. The employment "at-will" concept is premised upon the idea that an employer and the employe are both free to terminate the employment relationship at any time and for any cause, unless expressly prohibited by contract or statute. However, in *Nees,* this court acknowledged a basic public policy exception to the harshness of the "at-will" rule by stating:

> "* * * [T]here can be circumstances in which an employer discharges an employee for such a socially undesirable motive that the employer must respond in damages for any injury done * * *." 272 Or at 218.

In *Nees,* we held that an employe who had been discharged for serving on a jury could recover on a common law tort theory because such a discharge constituted a "socially undesirable motive." We noted that the societal interest in preserving the jury system was a strong one as evidenced by constitutional and statutory provisions but, because of the novelty of this new tort, we held that the plaintiff was entitled to recover only compensatory damages, not punitive damages. The court acknowledged that if it had not allowed such a right of action as a matter of public policy, the plaintiff would have had no remedy whatsoever. 272 Or at 219-21.

In *Campbell v. Ford Industries, Inc.,* 274 Or 253, 546 P2d 141 (1976), we held that a stockholder's statutory right to inspect corporate records possessed insufficient societal importance to warrant a tort cause of action for wrongful discharge because the interests protected were private, not public, and not related to the stockholder's role as an employe.

One year later, in *Walsh v. Consolidated Freightways,* 278 Or 347, 563 P2d 1205 (1977), this court found it unnecessary to extend an additional tort remedy for wrongful discharge when an employe was discharged because he complained about a safety violation. This court stated:

> "In *Nees v. Hocks, [supra],* we held that the community's interest in having citizens serve on juries was sufficiently great that employers could not be allowed to discharge employees solely for refusing to ask to be excused from jury duty. Because no other remedy existed for the wrongfully

discharged employee, we allowed the employee to recover compensatory damages in tort.

"Although the situation in this case is similar, there is one decisive difference. It is true, of course, that the community has a strong interest in maintaining safe working conditions. That interest has been expressed in both state and federal statutes. *See, e.g.,* ORS 654.001 *et seq.;* 29 USC § 660(c) (1970); 29 CFR § 1977.9(c) (1975). Correspondingly, we would agree that employers should not be allowed to discharge employees solely for complaining about safety problems. However, unlike the situation in *Nees,* an employee who is discharged because he complained of a safety violation *is* provided a remedy under existing law for his wrongful discharge. [Original emphasis.]

"Pursuant to 29 USC § 660(c), an employee who feels he has been discharged for reporting a safety or health violation can file a complaint with the Department of Labor within 30 days of his discharge and the Department will then investigate the charge. Under the statute, the Department is authorized to bring an action in federal district court if it finds that the employee has been wrongfully discharged, and the court can order 'all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay.' * * *" 278 Or at 351-52..

The rationale for refusing to allow any independent common law right of action in this context was expressly stated as follows:

"* * * [E]xisting remedies are adequate to protect both the interests of society in maintaining safe working conditions and the interests of employees who are discharged for complaining about safety and health problems. We also note that ORS 654.062(5) now provides a similar remedy under state law although, admittedly, these provisions were not in effect at the time of the conduct in question. Therefore, we find it unnecessary to extend an additional tort remedy to cover this kind of situation. * * *" 278 Or at 352-53.

Even though no remedy then existed under state law, we denied relief. ORS 654.062(5)[2] was not in effect at the time of

---

[2] ORS 654.062(5) provides:

"(5)(a) It is an unlawful employment practice for any person to bar or discharge from employment or otherwise discriminate against any employe or prospective employe because such employe has opposed any practice forbidden by ORS 654.001 to 654.295, made any complaint or instituted or caused to be instituted any proceeding under or related to ORS 654.001 to 654.295, or has

the conduct in question, but was when appeal was decided.

The following year, in *Brown v. Transcon Lines,* 284 Or 597, 588 P2d 1087 (1978), this court held that an employe who alleged he had been discharged because he filed a claim for workers' compensation could bring a tort action for damages. We again based our reasoning on public policy, holding that: (1) Firing a worker for exercising his statutory right to file a workers' compensation claim was a "socially undesirable motive" for discharge and came within the logic of *Nees v. Hocks, supra;* (2) the legislature did not intend to abrogate that common law cause of action when in 1973 it declared such a discharge an unlawful employment practice and simultaneously provided only for an administrative remedy which was discretionary with the Labor Commissioner; (3) the discretionary administrative remedy created by the 1973 legislation was not adequate; and (4) the "inadequacy" of the administrative remedy distinguished the case from *Walsh v. Consolidated Freightways, supra.*

In *Delaney v. Taco Time Int'l,* 297 Or 10, 681 P2d 114 (1984), our most recent case in this area, we held that a plaintiff wrongfully discharged for refusing to sign a false and potentially defamatory statement could recover common law tort damages. We consolidated wrongful discharge cases into three general categories:

---

testified or is about to testify in any such proceeding, or because of the exercise of such employe on behalf of the employe or others of any right afforded by ORS 654.001 to 654.295.

"(b) Any employe or prospective employe who believes that the employe has been barred or discharged from employment or otherwise discriminated against in compensation, or in terms, conditions or privileges of employment, by any person in violation of this subsection may, within 30 days after the employe has reasonable cause to believe that such a violation has occurred, file a complaint with the Commissioner of the Bureau of Labor and Industries alleging such discrimination under the provisions of ORS 659.040. Upon receipt of such complaint the commissioner shall process the complaint and case under the procedures, policies and remedies established by ORS 659.010 to 659.110 and the policies established by ORS 654.001 to 654.295 in the same way and to the same extent that the complaint would be processed by the commissioner if the complaint involved allegations of unlawful employment practices based upon race, religion, color, national origin, sex or age under ORS 659.030 (1)(f). The affected employe shall also have the right to bring a suit in any circuit court of the State of Oregon against any person alleged to have violated this subsection. The commissioner or the circuit court may order all appropriate relief including rehiring or reinstatement of the employe to the employe's former position with back pay."

This state statutory remedy parallels the federal statute, 29 USC § 660(c).

"*Nees* is an example of the first category of cases, where plaintiff was discharged for fulfilling a societal obligation. To discharge an employe for being called to jury duty thwarts not a private interest of the employe but an important public function. * * *

"The second category is demonstrated by *Campbell* and *Brown*. In both cases, plaintiffs pursued private statutory rights and were fired for their pursuit. In *Brown*, plaintiff was entitled to a wrongful discharge remedy and in *Campbell*, plaintiff was not. What is the difference? The statutory right pursued in *Brown* related directly to the plaintiff's role as an employe. He was fired for filing a worker's compensation claim. In *Campbell*, the statutory right pursued by plaintiff related to plaintiff, not in his role as an employe, but in his role as a stockholder. Furthermore, in *Brown* we noted that the statute was legislative recognition of an important public policy. The statute in *Campbell* did not reflect a public interest comparable to the community's interest in protecting injured workers. In this category, the common law rule for at-will employment prevails unless the employe is discharged while pursuing a right related to his role as an employe and the right is one of important public interest indicated by constitutional and statutory provisions and caselaw.

"*Walsh* is an example of the third category, that is, where an adequate existing remedy protects the interests of society so that an additional remedy of wrongful discharge will not be accorded." *Delaney,* 297 Or at 15-16.

The issue here is whether this case falls into the second or third category.

A discharge from employment based on sexual discrimination is prohibited by state law, ORS ch 659.[3] Apart

---

[3] ORS 659.030(1)(a) provides:

"For the purposes of ORS 659.010 to 659.110, 659.227, 659.330, 659.340 and 659.400 to 659.435, it is an unlawful employment practice:

"(a) For an employer, because of an individual's race, religion, color, sex, national origin, marital status or age if the individual is 18 years of age or older and under 70 years of age, or because of the race, religion, color, sex, national origin, marital status or age of any person with whom the individual associates, or because of a juvenile record, that has been expunged pursuant to ORS 419.800 to 419.839, of any individual, to refuse to hire or employ or to bar or discharge from employment such individual. However, discrimination is not an unlawful employment practice if such discrimination results from a bona fide occupational requirement reasonably necessary to the normal operation of the employer's business."

from the state statute, Section 703 of Title VII, 42 USC § 2000e to 2000e-2 provides:

"(a) It shall be an unlawful employment practice for an employer—[4]

"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, *sex*, or national origin." (Emphasis added.)

Although Title VII does not specifically speak of sexual harassment, it is now well settled that such conduct can amount to discrimination on the basis of sex under Title VII. *See, Henson v. City of Dundee,* 682 F2d 897 (11th Cir 1982); *Bundy v. Jackson,* 641 F2d 943 (DC Cir 1981); *Tomkins v. Public Service Electric & Gas Co.,* 568 F2d 1044 (3rd Cir 1977); *Barnes v. Costle,* 561 F2d 983 (DC Cir 1977); *Garber v. Saxon Business Products, Inc.,* 552 F2d 1032 (4th Cir 1977).

Title VII prohibits employment discrimination on the basis of sex and seeks to remove arbitrary barriers to sexual equality at the workplace with respect to "compensation, terms, conditions, or privileges of employment." 42 USC § 2000e-2(a)(1). Federal courts have held that an employer violates Title VII simply by creating or condoning an environment at the workplace which significantly and adversely affects an employe because of race or ethnicity, regardless of any tangible job detriment to the protected employe. *See, e.g., Calcote v. Texas Educational Foundation, Inc.,* 458 F Supp 231, 237 (WD Tex 1976) (racial harassment of white employe created discriminatory working conditions), *aff'd* 578 F2d 95 (5th Cir 1978).

In *Bundy v. Jackson, supra,* the court found that the principle of law equating illegal sex discrimination with a hostile work environment caused by sexual harassment "follows ineluctably from numerous cases finding Title VII violations where an employer created or condoned a substantially [racially] discriminatory work environment, regardless of whether the complaining employees lost any tangible job benefits." *Id.* 641 F2d at 943-44.

---

[4]Under this federal act, the term "employer" means a person engaged in industry affecting commerce who has 15 or more employes.

In *Henson v. City of Dundee, supra,* the Eleventh Circuit said:

"Sexual harassment which creates a hostile or offensive environment for members of one sex is every bit the arbitrary barrier to sexual equality at the workplace that racial harassment is to racial equality. Surely, a requirement that a man or woman run a gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living can be as demeaning and disconcerting as the harshest of racial epithets. A pattern of sexual harassment inflicted upon an employee because of her sex is a pattern of behavior that inflicts disparate treatment upon a member of one sex with respect to terms, conditions, or privileges of employment. There is no requirement that an employee subjected to such disparate treatment prove in addition that she has suffered tangible job detriment." 682 F2d at 902.

Further, the *Henson* court said:

"* * * [N]either the courts nor the E.E.O.C. have suggested that every instance of sexual harassment gives rise to a Title VII claim against an employer for a hostile work environment. Rather, the plaintiff must allege and prove a number of elements in order to establish her claim. These elements include the following:

"(1) *The employee belongs to a protected group.* As in other cases of sexual discrimination, this requires a simple situation that the employee is a man or a woman.

"(2) *The employee was subject to unwelcome sexual harassment.* The E.E.O.C. regulations helpfully define the type of conduct that may constitute sexual harassment: 'sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature.' [Citations omitted.] In order to constitute harassment, this conduct must be unwelcome in the sense that the employee did not solicit or incite it, and in the sense that the employee regarded the conduct as undesirable or offensive. [Citations omitted.]

"(3) *The harassment complained of was based upon sex.* The essence of a disparate treatment claim under Title VII is that an employee or applicant is intentionally singled out for adverse treatment on the basis of a prohibited criterion. [Citations omitted.] In proving a claim for a hostile work environment due to sexual harassment, therefore, the plaintiff must show that but for the fact of her sex, she would not have been the object of harassment. *See Bundy v. Jackson,* 641 F.2d at 942-43 (citing *Phillips v. Martin Marietta Corp.,* 400

U.S. 542, 91 S.Ct. 496, 27 L.ED.2d 613 (1971); 29 C.F.R. § 1604.4(a) (1979)); *Tomkins v. Public Service Electric and Gas Co.,* 568 F.2d 1044, 1047 n.4 (3d Cir. 1977); Note, *Sexual Harassment and Title VII,* 76 U.Mich.L.Rev. 1007, 1019-20 & n.94 (1978) (citing *McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 282 n.10, 96 S.Ct.2574, 2579 n.10, 49 L.Ed.2d 493 (1976)).

"In the typical case in which a male supervisor makes sexual overtures to a female worker, it is obvious that the supervisor did not treat male employees in a similar fashion. It will therefore be a simple matter for the plaintiff to prove that but for her sex, she would not have been subjected to sexual harassment. *See Bundy v. Jackson,* 641 F.2d at 942 n.7. However, there may be cases in which a supervisor makes sexual overtures to workers of both sexes or where the conduct complained of is equally offensive to male and female workers. *See Barnes v. Costle,* 561 F.2d 983, 990 n.55 (D.C.Cir. 1977); *Bradford v. Sloan Paper Co.,* 383 F.Supp. 1157, 1161 (N.D.Ala. 1974); Note, *Sexual Harassment and Title VII, supra,* at 1029-21 & n.99, 1033 & n.178; Comment, *Sexual Harassment and Title VII,* 51 N.Y.U.L.Rev. 148, 151-52 (1976). In such cases, the sexual harassment would not be based upon sex because men and women are accorded like treatment. Although the plaintiff might have a remedy under state law in such a situation, the plaintiff would have no remedy under Title VII. *Cf. Rogers v. Loews L'Enfant Plaza Hotel,* 526 F.Supp 523, 28 Empl. Prac. Dec. (CCH) P 32,553 at 24,470-73 (D.D.C.1982) (sexual harassment may form basis for action for common law torts of invasion of privacy, assault and battery, and intentional infliction of emotional distress); *Kyriazi v. Western Electric Co.,* 461 F.Supp. 894, 950 (D.N.J. 1978) (cause of action under New Jersey law for tortious interference with contract); *McPherson v. Employment Division,* 285 Or. 541, 558, 591 P.2d 1381, 1390 (1979) (employee may be able to collect state unemployment benefits if she is forced to resign because of intolerable harassment).

"(4) *The harassment complained of affected a 'term, condition, or privilege' of employment.* * * * For sexual harassment to state a claim under Title VII, it must be sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment. Whether sexual harassment at the workplace is sufficiently severe and persistent to affect seriously the psychological well being of employees is a question to be determined with regard to the totality of the circumstances. [Citations omitted.]

"(5) *Respondeat superior.* Where, as here, the plaintiff

seeks to hold the employer responsible for the hostile environment created by the plaintiff's supervisor or co-worker, she must show that the employer knew or should have known of the harassment in question and failed to take prompt remedial action." (Footnotes omitted.)

In sum, sexual harassment on the job from a supervisor is a forbidden discriminatory act.[5] Retaliatory discharge of an employe for resisting such harassment is a wrongful, unconscionable and tortious act. The second category of *Delaney* provides that the common law rule for "at-will" employment prevails unless the employe is discharged while pursuing a right related to his or her role as an employe and the right is one of important public interest indicated by constitutional and statutory provisions and caselaw. In this case, the plaintiff, Holien, sued defendant Sears in her second claim alleging that she was terminated for fulfilling her right to be gainfully employed without being subject to sexual advances and sexual harassment. We have stated that sexual harassment on the job is a forbidden discriminatory act under state and federal law and an employe has a legal right which is of important public interest not to be discharged for resisting sexual harassment on the job. Following the rationale of the second category of *Delaney,* it is not the supervisor's demand, or discriminatory sexual harassment, for which plaintiff seeks common law tort damages; it is for a tortious discharge following her rightful resistance to those demands or harassment. Such a discharge of an employe by an employer would be an actionable common law tort under the second category of *Delaney* unless the provisions of ORS chapter 659 demonstrate the legislature's intent not only to provide what it considered to be adequate remedies to an employe such as plaintiff, but by implication show a legislative intent to

---

[5] We wish to make clear that although we refer to sexual harassment on the job as an act of sexual discrimination, we do not include all forms of disparate treatment founded on gender. Some forms of disparate treatment may be legitimate. A common law or statutory cause of action for wrongful discharge emanating from sex discrimination is restricted to cases when sex is for no legitimate reason a substantial factor in the discrimination. *See, Bundy v. Jackson,* 641 F2d 943 (DC Cir 1981); *Barnes v. Costle,* 561 F2d 983 (DC Cir 1977). Sexual harassment has been defined as "the unwanted imposition of sexual requirements in the context of a relationship of unequal power." MacKinnon, Sexual Harassment of Working Women 1 (1979). The definition can encompass the harassment of men by women, the harassment from women by men, or the harassment of men or women by members of the same sex.

abrogate or supersede any common law remedy for damages. *See, Brown v. Transcon Lines,* 284 Or at 611.

Sears argues that the legislature abrogated any common law remedy for wrongful discharge when, in 1977, it enacted a statutory private equitable proceeding to supplement the existing administrative complaint procedure available through the Bureau of Labor since 1949. Or Laws 1949, ch 221, § 6.

Beginning in 1949, ORS 659.040 allowed employes subjected to unlawful employment practices as defined in ORS chapter 659 to file a complaint with the Bureau of Labor and seek redress through the administrative process. In 1977, ORS 659.121 was added to permit employes to seek redress for unlawful employment practices through a private suit in equity.[6]

Sears and *amici* for the defense contend that the remedies provided by ORS 659.121, although not including all elements of traditional tort recovery, were determined by the legislature to be appropriate and adequate to compensate victims of employment discrimination. They assert that the administrative machinery established by ORS chapter 659 provides a relatively quick and inexpensive alternative means of resolving disputes and the statutory scheme as a whole is a careful balance of both administrative and equitable judicial remedies. Defendant claims that to allow a common law tort action for wrongful discharge would disrupt this scheme in a number of ways.

First, the legislature made an informed decision rejecting legal damages in favor of equitable relief. To hold now that a plaintiff has an additional common law right of action would be in direct contravention of the intent manifest in the legislature's decision.

Second, the statutory scheme requires the complainant to elect between the administrative machinery and a

---

[6] ORCP 2 provides:

"There shall be one form of action known as a civil action. All procedural distinctions between actions at law and suits in equity are hereby abolished, *except for those distinctions specifically provided for by these rules, by statute, or by the Constitution of this state.*"

The equity distinction is specifically set forth by statute.

private civil action in equity. The apparent intent of this provision was to avoid duplicative, and possibly inconsistent, adjudications. Yet this intent would be defeated if a plaintiff is allowed to pursue an administrative remedy under the statute concurrently with a private tort action for the same wrongful employment practice.

Third, ORS 659.121(1) provides a one-year statute of limitations. The limitation period was also a subject of considerable debate. In contrast to the statutory one-year limitation period, an action for the tort of wrongful discharge may be commenced within two years of the event. ORS 12.110. By bringing a wrongful discharge claim solely under the common law tort theory, a plaintiff can simply circumvent a deliberate legislative choice.

In an effort to determine whether the legislature felt it was abrogating any common law remedy for retaliatory discharge of an employe for resisting sexual harassment, we consider the legislative history of the 1977 amendments to ORS chapter 659.

In 1977, House Bill 2223, prepared by Labor Commissioner Bill Stevenson, as originally introduced, would have provided as follows:

"Any person claiming to be aggrieved by an unlawful employment practice as defined in subsection (13) of ORS 659.010 or an unlawful practice as defined in subsection (14) of ORS 659.010 shall have a cause of suit to recover compensatory damages, punitive damages and such further relief as will eliminate the effects of any unlawful practice found. The suit shall be commenced within one year of the alleged unlawful practice. Any person recovering damages or relief under this section shall be entitled to reasonable attorney fees as determined by the court in addition to costs and necessary disbursements."

At hearings before the House Labor Committee on HB 2223, there was testimony that under Oregon laws the existing administrative process of filing a complaint with the Commissioner of the Bureau of Labor was the sole legislative recourse for a complaint for discriminatory employment practice, that persons filing such administrative complaints had been "waiting two to four years for hearings with the Bureau of Labor," and that "persons who file these complaints should

have the option of pursuing their charges in court if they so desire." (Hearings on HB 2223, House Labor Committee, June 21, 1977, p 6, and Feb. 4, 1977, Ex B, pp 1-2.)

The legislative history of HB 2223 further reveals that the Bureau of Labor and the Attorney General's office developed a set of draft amendments that were presented to the House Labor Committee on April 8, 1977. An assistant attorney general testified that a disagreement arose between his office and the Bureau of Labor on the issue of remedies. The Attorney General's office argued that the statutory remedies for private causes of action should be consistent with the federal Title VII remedies and that maintaining consistency with federal law also was the reason for providing punitive and compensatory damages for housing discrimination and discrimination on the basis of handicap. The Labor Commissioner was of the opinion that the remedies available under the private cause of action should be consistent with those available under the Labor Commissioner's existing administrative process.

The April 8 hearing was extensive. Such topics as the statute of limitations for private rights of action, concurrent federal and state enforcement authority, election of remedies, prevailing party attorney fees, fees for frivolous suits and the Bureau of Labor's excessive delay in processing complaints were discussed. A representative of Tektronix, Inc., spoke briefly in opposition to punitive damages. She testified that punitive damage awards would stymie the conciliation process, increase the filing of frivolous claims and cause higher settlements. Hearing on HB 2223 before House Labor Committee, April 8, 1977, Tape 14, Side 1. At the close of the hearing, Representative Lindquist moved to adopt the Attorney General's amendments and to have the bill sent for engrossing and enrolling.

On April 29, 1977, the committee discussed the amendments now contained in A-Engrossed HB 2223. Representative Kulongoski summarized the engrossed bill. He explained that section 4 provided private causes of action: subsection (1) of section 4 allowed equitable relief for unlawful employment practices; subsection (2) allowed both legal and equitable relief for discrimination in the provision of housing

and discrimination on the basis of mental and physical handicap. Representative Kulongoski stated that the reason for the difference in remedies was to conform the state statute to federal law. Work Session on HB 2223 before House Labor Committee, April 29, 1977, Tape 18, Side 2. The amendments were adopted and sent to the floor on May 11, 1977.

When Representative Kulongoski presented the bill to the Senate Judiciary Committee, he explained that the one-year statute of limitations on private suits was adopted to coincide with the federal employment discrimination laws. He explained that equitable relief for discrimination in employment was chosen because it "closely parallels the EEOC provisions of the federal code." He further explained why an additional legal remedy was provided for housing discrimination, "because in housing discrimination it is virtually impossible to put the party back into a position they would have been in before the discrimination." He asserted that the bill "parallels federal EEOC provisions in that that is one section that allows a cause of action in law for breach of discrimination laws." Hearing on HB 2223 before Senate Judiciary Committee, June 8, 1977, Tape 42, Side 2. There was testimony by an advocate of that bill that it was "a bill to create the private right of action" and that it "gives the aggrieved party the right to pursue his or her complaint in court rather than having to go through the labor commission." *Id.* at 14-15.

No sponsor or opponent of this legislation asserted that a common law remedy for tort damages existed. The general assumption was that no such common law remedy existed and, therefore, the statute was necessary to provide any remedy and the remedy it chose was to match existing Title VII federal law.

The original version of HB 2223 never made it to the Senate. B-Engrossed HB 2223 was presented to the Senate Judiciary Committee with this explanation by committee counsel:

> *"Problem addressed.* There is no private right of action for persons aggrieved by unlawful employment practices. The current procedure of filing complaints with the Bureau of Labor has resulted in long delays in the resolution of those complaints. The long delay often prevents satisfactory resolution.

*"Function and purpose of measure as reported out.* B-ENGROSSED HOUSE BILL 2223 creates a private right of action for persons discriminated against in violation of Oregon law. Individuals will be given the choice of filing a complaint in circuit court or pursuing existing administrative remedies."

As finally enacted, HB 2223 provided that a person complaining of an unlawful employment practice was authorized by statute to file a civil suit for injunctive relief and "such other equitable relief as may be appropriate, including but not limited to reinstatement * * * with or without back pay," plus costs and reasonable attorney fees. Or Laws 1977, ch 453, § 6; ORS 659.121(1). In contrast, a person complaining of a discriminatory practice in real estate transactions or in public accommodations could file a civil action for compensatory damages or $200, whichever is greater, and for punitive damages not to exceed $2,500, plus costs and reasonable attorney fees. Or Laws 1977, ch 453, § 6(2); ORS 659.121(2). The legislature also provided that the filing of a complaint with the commissioner shall not be a condition precedent to the filing of such a suit or action and that the filing of such a suit or action shall constitute both an election of remedies and a waiver of the right to file a complaint with the commissioner. Or Laws 1977, ch 453, §§ 6(3) and (4); ORS 659.121(3) and (4). Finally, the statute provided that the provisions of the Act "shall apply only to those alleged acts of discrimination occurring on or after the effective date of this Act [October 4, 1977]." Or Laws 1977, ch 453, § 7.

In essence, the legislature, by its final action, said to aggrieved employes that under state statute:

(1) You may continue to obtain such relief, including general damages, as is provided under administrative remedies.

(2) You may obtain equitable relief as we provide by this statute.

(3) You are deprived of a jury trial under the statute.

(4) You may not recover general or punitive damages under the statute.

The responsibility of this court is to apply and

interpret the law, not to assume the role of a legislative chamber. As we said in *Burnette v. Wahl,* 284 Or 705, 712, 588 P2d 1105 (1978):

"*  *  * If there is any chance that invasion into the field by the court's establishment of a civil cause of action might interfere with the total legislative scheme, courts should err on the side of non-intrusion because it is always possible for the legislature to establish such a civil cause of action if it desires. Courts have no omnipotence in the field of planning, particularly social planning of the kind involved here. Courts should exercise restraint in the fields in which the legislature has attempted fairly comprehensive social regulations."

In 1977, the Oregon legislature in providing a statutory remedy made a decision to provide victims of wrongful sex discrimination in employment an additional remedy for equitable relief in a court of law. It is apparent that the inadequacies of the administrative complaint process prompted the 1977 amendments. The legislature attempted to solve the Bureau of Labor's backlog by creating the opportunity for employes to pursue private litigation in lieu of an administrative complaint.

It seems elementary that before a legislative body can intend to eliminate certain forms of remedy it must be aware that such remedies exist.[7] The legislature, in 1977, had no idea that remedies other than those provided through the administrative complaint process were available to employes. HB 2223 was presented to the House Labor Committee precisely because no private right to redress was thought to exist. There is no basis upon which to conclude that the legislature either was aware of a common law remedy or intended to eliminate it and substitute a statutory suit for equitable relief.

Neither does the legislation, by necessary implication, negate a common law remedy for wrongful discharge arising from *Nees v. Hocks, supra,* to which plaintiff would have been entitled before the 1977 amendments.

"As a general rule, if a statute which provides for a new remedy shows no intention to negate, either expressly or by

---

[7] We are aware of the dicta in *Brown v. Transcon Lines,* 284 Or 597, 611, 588 P2d 1087 (1978), asserting that a legislative intent to abrogate or supersede any previously existing common law remedy may be implied "even though the legislature might not then have been aware of such a remedy." We reject such a contention in this case.

necessary implication, a pre-existing common law remedy, the new remedy will be regarded as merely cumulative, rather than exclusive, with the result that a plaintiff may resort to either the pre-existing remedy or the new remedy." *Brown v. Transcon Lines,* 284 Or at 610.

There is no inherent inconsistency between the availability of equitable relief through a statutory suit and legal remedies through a common law action for wrongful discharge.[8]

As to the issue of adequacy of state and federal remedies, ORS 659.121 and Title VII fail to capture the personal nature of the injury done to a wrongfully discharged employe as an individual and the remedies provided by the statutes fail to appreciate the relevant dimensions of the problem. Reinstatement, back pay, and injunctions vindicate the rights of the victimized group without compensating the plaintiff for such personal injuries as anguish, physical symptoms of stress, a sense of degradation, and the cost of psychiatric care. Legal as well as equitable remedies are needed to make the plaintiff whole. *See* Farley, Sexual Shakedown: The Sexual Harassment of Women on the Job 15 (1978); MacKinnon, Sexual Harassment of Working Women 1 (1979); Note, *Sexual Harassment Claims of Abusive Work Environment Under Title VII,* 97 Harv L Rev 1449, 1465 (1984).

The trial court erred in granting the summary judgment as to plaintiff's second claim or cause of action.

Because this case must be remanded for a new trial we address plaintiff's first claim, which was specifically based on statutory employment discrimination. Plaintiff sought damages for wrongful termination in the sum of $524.80 in lost wages, $262.40 in back wages and $50,000 for general damages resulting from embarrassment, humiliation, mental anguish and emotional depression, etc. Plaintiff also sought punitive damages under the statute for malicious conduct of the defendants. It should be noted that plaintiff did not seek any traditional equitable relief, *e.g.,* injunction or reinstatement, under her statutory employment discrimination claim. Prior to trial, the Presiding Judge of Multnomah County on

---

[8] Granted, the procedures and remedies are substantially different, *e.g.,* one-year statute of limitations and no jury under the statute versus two-year statute of limitations and a jury for the common law action; but these claims may co-exist.

defendant's motion had stricken plaintiff's Count I claim for general and punitive damages. The original trial judge submitted the remaining Count I damage claims to the jury which found no liability and no damages. The trial judge then recognized his error in submitting this court matter to the jury and adopted the jury's findings as his own.[9]

On appeal, the plaintiff complains that she was entitled to equitable relief for the statutory violation and that equitable relief as contemplated by the statute would include awarding general damages to the employe. We agree with the plaintiff that when equity cannot be accomplished by such traditional equitable remedies as reinstatement, which she certainly did not want or request in this case, or injunction, which might benefit future employes but would not benefit her, an equity court is empowered to allow general damages in appropriate cases. *See, Fisk v. Leith,* 137 Or 459, 464, 299 P 1013, 3 P2d 535 (1931).

■    However, the issue of recovery of general damages

---

[9] This finding is difficult to assess because of the improper jury poll. Nevertheless, we treat the judge's finding of no liability as his own decision independent of the jury's verdict.

The judge hearing the summary judgment also commented:

"So to that extent, my feeling is that the common law remedy isn't available but even if it is, I think that it's precluded by a finding which is a judgment to the effect that the Defendant isn't guilty of these acts which are the complaints, whether common law or under the statute."

This judge apparently accepted as an alternative ground for summary judgment Sears' argument that because plaintiff's common law claim did not allege any additional acts of discrimination on the part of Sears, the ruling in favor of Sears on the statutory claim was res judicata or collateral estoppel with regard to her common law claim.

The Court of Appeals correctly disposed of this alternative ground as follows:

"An alternative basis for granting summary judgment was res judicata and collateral estoppel. On appeal, defendant recasts the argument in terms of ORCP 47 and argues that there are no remaining issues of material fact. Defendant contends that, because the trial court found that defendants did not discharge plaintiff for impermissible reasons based on sex on the first claim, the jury could not find that defendant wrongfully discharged plaintiff for the same impermissible reasons on the second claim.

"The trial court's determination of the facts on the first claim did not preclude the jury from weighing the evidence and deciding the facts on the second claim. Only when there is insufficient evidence to go to the jury may the trial court preclude a jury determination. *See* ORCP 60 and 63. There are issues of material fact on the claim for wrongful discharge that require resolution by a jury." *Holien v. Sears, Roebuck and Co.,* 66 Or App 911, 919 n 5, 677 P2d 704 (1984).

under ORS chapter 659 was carefully considered by the legislature. The legislature elected to make no provision for general damages at the same time it rejected a proposal for punitive damages. The removal of the damages provision was no oversight. At hearings before the House Labor Committee on April 8, 1977, an assistant attorney general explained the remedies provided by the proposed legislation. The legislative history maintained by the state archives contains the following entry:

> "[The assistant attorney general] discussed another disagreement with the area of possible remedies for the complaint. * * * The proposed amended bill would not provide compensatory or punitive damages because the Attorney General's office does not think it should; the Bureau wants such remedies. Discussion ensued regarding the various types of remedies for various types of complaints in the federal and state level." Minutes, House Labor Committee, April 8, 1977.

Chairperson Kulongoski agreed that "the issue of the availability of damages was a major policy decision to be made." *Id.*

As set forth in this opinion, the legislature chose to parallel federal Title VII remedies. Neither general damages nor punitive damages is recoverable under Title VII and they are not recoverable under Oregon's imitation of that act. As was said in *Shah v. Mt. Zion Hospital & Medical Ctr.,* 642 F2d 268, 272 (9th Cir 1981):

> "The great weight of authority denies support for Shah's request for emotional distress and punitive damages under Title VII. 42 U.S.C. § 2000e-5(g) provides the following remedies for intentionally engaging in unlawful employment practices:
>
> > the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ... or any other equitable relief as the court deems appropriate.
>
> Emotional and punitive damages do not constitute equitable relief or back pay, the categories statutorily authorized. *See, e.g., Miller v. Texas State Board of Barber Examiners,* 615 F.2d 650, 654 (5th Cir. 1980), *cert. denied,* [449] U.S. [891], 101 S.Ct. 249, 66 L.Ed.2d 117 (1980); *DeGrace v. Rumsfeld,* 614 F.2d 796, 808 (1st Cir. 1980); *Altman v. Stevens Fashion*

*Fabrics,* 441 F.Supp. 1318, 1320 (N.D.Cal. 1977). *See [Great American Federal Savings & Loan Association v. Novotny,* 442 U.S. 366, 374-75, 99 S.Ct. 2345, 2350-51, 60 L.Ed.2d 957 (1979)]. \* \* \*"

In this case, the trial court did not err in striking general and punitive damages from the statutory claim.

The Court of Appeals is affirmed and this case is remanded to the trial court for a new trial solely on the common law wrongful discharge claim.

**LINDE, J.,** concurring.

I agree that plaintiff's common law damage claim for wrongful discharge is not precluded by the fact that the legislature has enacted other remedies for employment discrimination on the basis of sex. I write separately to emphasize the importance of not confusing these two kinds of claims in this case.

If plaintiff's tort claim were one for "discriminatory discharge," that is to say, if her claim were that she was discharged by reason of her sex, there would be serious doubt that the remedies for employment discrimination enacted by the legislature leave room for an action for damages or that the common law would recognize it. But this plaintiff's case does not hinge on showing that her employer, Sears, Roebuck and Co., discharged her by reason of her sex. Her case depends on showing that Sears discharged her for exercising a legal right to resist a supervisor's sexual advances, which is a very different thing.

As the Court states, plaintiff must bring her common law claim of tortious discharge within the premises stated in *Delaney v. Taco Time Int'l.* 297 Or 10, 681 P2d 114 (1984). In *Delaney* we sharpened the earlier generalized phrasing that it is tortious to discharge an employee at will for a "socially undesirable motive," *Nees v. Hocks,* 272 Or 210, 536 P2d 512 (1975). We noted that, more specifically, our cases had held it a tort to discharge an employee either for fulfilling a societal obligation or for pursuing a legal right related directly to his or her status or role as an employee. A discharge for either reason gives rise to a tort claim for damages unless there is reason to conclude that the legislature intended another remedy to be sufficient to protect the discharged employee.

The exact phrasing used in *Delaney* may not represent final perfection in every respect. Few tort opinions do. Perhaps the cases covered by exclusive legislative remedies are not strictly a parallel third category, as *Delaney* suggests, ·but rather an exclusion if one of the two bases for a tort claim is found. Also, in my view, it is inaccurate that a court will weigh whether another remedy is "adequate" in order to determine whether the employer's act is a tort, as *Delaney,* 297 Or at 16, repeated from *Walsh v. Consolidated Freightways,* 278 Or 347, 351-52, 563 P2d 1205 (1977). Rightly understood, the references to statutory remedies in *Walsh* and in *Brown v. Transcon Lines,* 284 Or 597, 588 P2d 1087 (1978), mean remedies for the same discharge or other employer action for which the employee seeks tort damages, and the "adequacy" of these other remedies is relevant only to determining whether the legislature likely intended to make them exclusive. Here, however, it is immaterial if the legislature intended to provide exclusive remedies for discrimination under ORS chapter 659. Plaintiff's tort claim is not for the alleged discriminatory harassment, but for allegedly being discharged for resisting it.

Plaintiff has a legal right to resist a supervisor's harassment under the federal statute and decisions cited by the Court.[1] They hold that such harassment can be a form of discrimination, and for this discrimination the statutory remedies perhaps are exclusive. But what is discriminatory is the on-the-job harassment, not—at least not necessarily—plaintiff's discharge for resisting it. Sears, or another employer, might have a practice of discharging anyone employed at will who gets into extended controversy with a supervisor over a personal relationship, or perhaps over any other matter. The practice might apply quite neutrally to men and women in similar circumstances. Such a discharge might be entirely nondiscriminatory.

If the employee is discharged as a result of a controversy in which the employee's position does not rest on a societal obligation or an employment-related legal right, *Delaney* provides no tort action for the discharge. This may be an unsatisfactory state of the law for nonsupervisory workers,

---

[1] We need not consider whether the same would be held under ORS chapter 659; the federal right suffices for the employee's right to resist the harassment.

but it reflects the common law view of employment at will in the absence of statute or contract. *Cf. Swanson v. Van Duyn Choc. Shops,* 282 Or 491, 579 P2d 239 (1978). But if an employee pleads a tortious discharge for having asserted a job-related legal right, it does not matter whether this was a right against discrimination or something else. If it is alleged to have been a right against discrimination, as here, that does not turn the subsequent discharge into a "discriminatory discharge" or the tort action for wrongful discharge into a claim for employment discrimination.

In the present case most of the allegations in plaintiff's tort action are incorporated by reference from her statutory claim of employment discrimination, and in other respects the two theories have not been kept clearly distinct throughout these proceedings. If plaintiff's discharge is presented merely as an element in the alleged discriminatory harassment, the statutory remedies provided for such discrimination may indeed be exclusive. But the allegations contain enough to raise an issue of tortious discharge.[2] On remand plaintiff may be able to show not only that she was subjected to sexual harassment by her supervisor, but that Sears discharged her for exercising or asserting her federally protected, job-related right against such harassment. The alleged tort does not involve any showing that the discharge itself was discriminatory, and it is not displaced by statutory remedies for employment discrimination in ORS chapter 659. I therefore concur in the Court's decision.

---

[2]Three paragraphs incorporated by reference in plaintiff's second cause of action state:

V.

"During this period, Plaintiff, at all times, refused any and all said sexual advances and admonished Defendant, PAUL BLASKO, to stop the sexual harassment."

VI.

"Said sexual advances and harassment became a term and condition of Plaintiff's employment, in that as a result of Plaintiff's refusal to submit to said sexual advances and harassment, Plaintiff received a derogatory employment evaluation and was ultimately fired by Defendants."

XI.

"On June 6, 1978, Plaintiff was terminated by Defendants for her inability to be compatible with her supervisor, Defendant, PAUL BLASKO."

**ROBERTS, J.,** concurring.

I concur in the opinion of the majority with regard to the existence of the tort of wrongful discharge. I do not believe, however, that the statutory claim for employment discrimination is before the court and I would not reach the issue of statutory damages.